(27 P.3d 924)
No. 85,085

STATE OF KANSAS, *Appellee*, v. KENNETH MARION, *Appellant*.

Opinion filed June 15, 2001.

*Cory D. Riddle*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Tony Cruz*, assistant county attorney, *Chris Biggs*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before PIERRON, P.J., GREEN and BEIER, JJ.

*Per Curiam:* Kenneth Marion appeals his convictions of possession of cocaine, possession of drug paraphernalia, and delivering or possessing with the intent to deliver simulated controlled substances. On appeal, Marion argues that the evidence was insuffi-

cient to support his convictions. We affirm in part and reverse in part.

On July 27, 1999, Officer Richard Parsons stopped a vehicle driven by Thomas Lewis. Marion was a passenger in the vehicle but identified himself as Terry Fountain. Officer Parsons questioned Lewis about a burglary he was suspected of committing. Lewis consented to a search of his residence for the reportedly stolen items. Marion told Officer Parsons that he was living with Lewis at 424 West 4th Street, Junction City, Kansas.

Lewis' residence was later searched. In the living room, there was a table, dresser, mattress, sleeping bag, and blankets. On the table in the living room lay a candle cut up into small pieces. There was also copper wire mesh which is commonly used in a crack pipe. In addition, officers found pieces of clear plastic baggies in the kitchen garbage can. A utility bill discovered in the pantry and mail discarded in the trash were addressed to Lewis. The officers did not find any evidence in the residence which indicated that Marion lived there.

In Lewis' bedroom, there was a dresser and clothes hanging in the closet. The other bedroom was empty. Officer Parsons testified that Marion indicated that he used to live in the empty bedroom but was currently staying in the living room.

Sonia Gregoire, a Junction City Drug Task Force Officer, assisted with the search of Lewis' residence. Upon entering the residence, Officer Gregoire observed a spoon covered with a white residue on the stove. Officer Gregoire testified that it was common to use a spoon for breaking down cocaine and that the process would leave a white residue on the spoon. Officer Gregoire further testified that she found baggies with the corners torn out. The corners are commonly torn out of baggies to package narcotics.

Officer Gregoire also found an assortment of baggies, baggie corners, razor blades, and candles cut up to look like crack cocaine. In addition, Officer Gregoire observed a tube of sports cream in the living room. She testified that it was common for purchasers of crack cocaine to place the substance in their mouths to check for a numbing sensation to ensure that the substance they were buying was actually cocaine. Officer Gregoire testified that if the

pieces of candle had sports cream on them, a purchaser who placed a piece of the candle into his or her mouth might believe that the fake cocaine was real because the sports cream would create a numbing sensation.

Three of the baggie corners discovered in the kitchen garbage can and the spoon which was on the stove tested positive for cocaine. The remainder of the property seized from the residence did not test positive for a controlled substance.

Based on this evidence, Marion was arrested and charged with numerous drug offenses. Some of the offenses were dismissed, and Marion was tried and convicted by a jury of single counts of possession of cocaine, possession of drug paraphernalia, and delivering or possessing with the intent to deliver simulated controlled substances.

Marion's first argument on appeal is that the evidence was insufficient to support his conviction of delivering or possessing with the intent to deliver simulated controlled substances in violation of K.S.A. 2000 Supp. 65-4153(a)(1). Marion alleges that the State combined K.S.A. 2000 Supp. 65-4153(a)(1) (possession or manufacture of simulated controlled substances) and K.S.A. 65-4150(e) (defining the term "simulated controlled substance") to create an offense that does not exist. The State concedes that the evidence was insufficient to convict Marion of criminal use of simulated controlled substances.

When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

K.S.A. 2000 Supp. 65-4153(a)(1) states that "[n]o person shall deliver, possess with intent to deliver, manufacture with intent to deliver or cause to be delivered within this state . . . [a]ny simulated controlled substance." In addition, K.S.A. 65-4150(e) defines "simulated controlled substance" as "any product which identifies itself by a common name or slang term associated with a controlled substance and which indicates on its label or accompa-

nying promotional material that the product simulates the effect of a controlled substance."

Here, the State concedes that the legislature's definition of a simulated controlled substance in K.S.A. 65-4150(e) makes Marion's conviction for that offense a legal impossibility. Because there were no labels or promotional materials associated with the faux crack cocaine recovered in this case, Marion's conviction for delivering or possessing with the intent to deliver a simulated controlled substance was not supported by sufficient evidence. As a result, we reverse Marion's conviction for this offense.

Marion further argues that his remaining convictions of possession of cocaine and possession of drug paraphernalia were not supported by sufficient evidence. Marion argues that there was no evidence which tended to indicate that he, as opposed to Lewis, was in possession of the cocaine and drug paraphernalia found at the residence.

When a defendant is in nonexclusive possession of the premises upon which drugs are found, it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs. *State v. Cruz*, 15 Kan. App. 2d 476, Syl. ¶ 11, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991). The *Cruz* court stated that "[p]ossession" of a controlled substance "is having control over the [controlled substance] with knowledge of, and intent to have, such control. Possession and intent, like any element of a crime, may be proved by circumstantial evidence." 15 Kan. App. 2d at 489. Other incriminating factors tending to prove a defendant's knowing possession of drugs include

" 'a defendant's previous participation in the sale of drugs, his use of narcotics, his proximity to the area where the drugs are found, and the fact that the drugs are found in plain view. Other factors noted in cases involving nonexclusive possession include incriminating statements of the defendant, suspicious behavior, and proximity of defendant's possession[s] to the drugs.' [Citation omitted.]" 15 Kan. App. 2d at 489.

Here, other incriminating circumstances connected Marion to the cocaine and drug paraphernalia recovered from the residence. First, the spoon containing the cocaine residue was found in plain

view. See *State v. Bullocks*, 2 Kan. App. 2d 48, 49-50, 574 P.2d 243, *rev. denied* 225 Kan. 846 (1978) (holding that the evidence tended to show knowledge and intent because drugs and paraphernalia were found in defendant's house in plain view). Moreover, some of the drug paraphernalia was found in the living room, where Marion admitted he was staying. A mattress, other bedroom furniture, and bedding were found in the living room. Accordingly, the drug paraphernalia was located in the immediate area where Marion slept. See *State v. Walker*, 217 Kan. 186, 190, 535 P.2d 924 (1975) (holding that the defendant constructively possessed heroin which was found in the bedroom of a house that only he occupied). This evidence sufficiently links Marion to the cocaine and drug paraphernalia and, as a result, his convictions for possession of cocaine and possession of drug paraphernalia were supported by sufficient evidence.

Affirmed in part and reversed in part.