NOT DESIGNATED FOR PUBLICATION

No. 113,711

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

WILLIAM BRANDON CALLAHAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Franklin District Court; DOUGLAS P. WITTEMAN, judge. Opinion filed August 19, 2016. Affirmed.

*John A. Boyd*, of Finch, Covington & Boyd, Chtd., of Ottawa, for appellant.

*Josh Smith,* deputy county attorney, *Stephen A. Hunting*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, C.J., HILL and ATCHESON, JJ.

*Per Curiam:*  The law allows police to make warrantless searches if they have probable cause and there are exigent circumstances. The mobility of an automobile is an exigent circumstance. Therefore, the law permits a warrantless search of the automobile when probable cause exists.

Here, where the detectives stopped a car driven by William Brandon Callahan after it had just pulled away from a suspected drug house and they could see methamphetamine on the car seat through the open driver's door, we hold the detectives

1

had probable cause to search the passenger compartment of the car and their warrantless search was permissible. Thus, the drugs found in the car during the subsequent search were admissible into evidence on a charge of illegal possession of methamphetamine. We affirm Callahan's convictions.

*The detectives saw Callahan drive up to a house that they were watching.*

One afternoon in February 2013, Detectives J.W. Hawkins and Kiel Lasswell of the Franklin County drug enforcement unit were watching a house for drug activity. The unit had received numerous telephone calls from at least two different neighbors in the area concerning potential drug activity at the house.

The detectives noticed a white Ford Explorer automobile near the residence. They watched a man get out of the passenger's side of the car and approach the suspected drug house. The detectives did not see the man enter the house. Later, when the Explorer drove away, the detectives—in an unmarked car—followed it.

After Detective Lasswell noticed the Explorer make a lane change without signaling, they made a traffic stop. Detective Hawkins approached the vehicle and identified Callahan as the driver and sole occupant of the vehicle. Hawkins asked Callahan for his driving license, and Callahan said his license was suspended. Callahan got out of the car at Hawkins' request, leaving the driver's side door open. The detectives arrested Callahan for driving with a suspended license.

Detective Hawkins read Callahan his *Miranda* rights, and Callahan agreed to speak with him. When questioned about his presence near the suspected drug house, Callahan said he knew he should not have gone to that house. Callahan said he was there to look at a small green SUV because he was thinking of buying it. Detective Hawkins had observed a small green SUV in the driveway at the house. Detective Hawkins

searched Callahan and seized a cell phone found in his jacket pocket. The detectives later found photographs of a small green SUV on Callahan's phone.

While Hawkins was talking to Callahan, Lasswell approached the driver's side of Callahan's vehicle and looked inside. Lasswell saw a white granular substance he described as a few small specks, crystals, or shards on the front driver's side seat. Based on their training and experience, both detectives believed it was methamphetamine. The substance from the front seat was consumed in a field test. The substance tested positive for methamphetamine in the field.

After the field test, the detectives searched Callahan's car and found a cigarette package shoved down between the center console and the passenger's seat that contained a small plastic baggie of a white crystalline substance. The substance appeared to be methamphetamine. The cigarette package was within arm's reach of the driver.

KBI laboratory testing later confirmed the substance to be methamphetamine. The baggie contained about a half gram of methamphetamine. Callahan denied owning the cigarette package and suggested that the person who was in his car discussing the sale of the SUV may have left it. Callahan stated that he smoked menthol cigarettes. The package found by the detectives was not menthol. The Explorer Callahan was driving was not registered in his name.

*The detectives obtained a search warrant for Callahan's cell phone.*

Callahan gave the detectives the password to his cell phone. Detective Hawkins obtained a search warrant to search Callahan's cell phone. The application and affidavit alleged many of the facts stated herein and asserted that drug dealers and users commonly use cell phones to facilitate drug transactions. The detectives searched the phone and found what they believed were text messages regarding a drug transaction.

Callahan's phone received a message that read, '"Got great prices and quality tonight."' Detective Hawkins testified that he believed the message was from a drug dealer "advertising his quality and prices." A message was sent from Callahan's phone at 12:49 p.m. on the same day he was arrested that said, '"Hey, I need a HG in an hour or two. Where you gonna be at?"'

The detectives testified that based on their experience in narcotics investigations, the term "HG" referred to half a gram of methamphetamine. A message was sent from Callahan's phone at 2:32 the same day that said, '"Hey, can I head that way now? Are you at your house?"' A message was sent at 2:53 that said, '"What's up man? Can I start heading up there? Let me know."' No reply messages to any of the texts were found.

The last message was within 1-2 hours of the detectives' contact with Callahan. The phone number associated with the text messages did not match the phone number of a suspected drug dealer at the house.

The State charged Callahan with one count of possession of methamphetamine, possession of drug paraphernalia, driving while suspended, and failing to signal a lane change. Prior to trial, he moved to suppress the drugs found in the Explorer. The court denied that motion, and then Callahan renewed his objection to the admission of the contraband at trial. Also prior to trial, Callahan asked the court for an order preventing the State from offering evidence of the text messages found on his cell phone. The court denied this motion, and the texts were admitted into evidence. The jury convicted Callahan on all counts.

In his appeal, Callahan contends that the search of the Explorer was illegal and there was insufficient evidence to prove that he had knowledge of and the intent to control the methamphetamine found in the car. He also claims that the court erred when it denied his motion to suppress the text messages found on his cell phone and the court

4

should have granted his motion in limine preventing the State from arguing to the jury that he was present at a suspected drug house. We will address the issues in that order.

*We will not consider the positive field test results in our probable cause analysis.*

When we review a district court's decision on a motion to suppress, we look at the district court's factual findings to see if substantial competent evidence supports them. Our review of the court's ultimate legal conclusion is unlimited. In reviewing the factual findings, the appellate court neither reweighs the evidence nor assesses the credibility of witnesses. *State v. Neighbors*, 299 Kan. 234, 240, 328 P.3d 1081 (2014). When the material facts on a motion to suppress are not in dispute, the question of whether to suppress evidence is a question of law over which an appellate court has unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

The State bears the burden of proof on a suppression motion. It must prove to the trial court the lawfulness of the search and seizure. *State v. Reiss*, 299 Kan. 291, 296, 326 P.3d 367 (2014). Under the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights, a warrantless search is per se unreasonable unless it falls within one of the exceptions to the search warrant requirement. *Neighbors*, 299 Kan. at 239. Probable cause with exigent circumstances is such an exception. Our question becomes, then, did the detectives have probable cause to believe there were drugs in the car?

After Detective Hawkins learned that Callahan's driving license was suspended, he asked Callahan to get out of his vehicle. Hawkins directed Callahan to the rear of his vehicle. Callahan was arrested and advised of his rights but was not yet handcuffed. Detective Hawkins directed Callahan away from his vehicle while Detective Lasswell approached the driver's side of Callahan's car. After Detective Lasswell discovered specks of what he believed to be methamphetamine on the driver's seat, Callahan was

5

handcuffed. A sheriff's deputy waited with Callahan while Detectives Hawkins and Lasswell searched Callahan's car.

When Detective Lasswell stood outside the Explorer and saw the small crystals on the driver's side seat of Callahan's car, there was no search of the car. After all, Callahan had left the driver's door open and Lasswell did not have to open the door any further to look inside the passenger compartment. He simply stood outside the vehicle and looked in. But when Lasswell reached in and grabbed the crystals off the seat for field testing, he did indeed perform a search of the car. Since he performed the field test *after* the search, we cannot use the results of the test as a basis for probable cause to search the car in the first place.

We recognize that there are different types of "plain view" searches. First, no Fourth Amendment search occurs when an officer merely observes incriminating evidence from a nonintrusive vantage point. That is what happened here with Detective Lasswell. But "lawful observation does not equate to lawful seizure." *State v. Fisher*, 283 Kan. 272, 292-93, 154 P.3d 455 (2007).

Second, when an officer has lawfully intruded into a constitutionally protected area, the officer may "seize" evidence in plain view that is immediately apparent of criminal activity. *Fisher*, 283 Kan. at 292-95; see *State v. Ulrey*, 41 Kan. App. 2d 1052, 1060-62, 208 P.3d 317 (2009).

> "'[I]f police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. [Citations omitted.] If, however, the police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object—*i.e.,* if 'it's incriminating character [is not] 'immediately apparent," [citation omitted]—the plain-view doctrine cannot justify its seizure. [Citation omitted.]'" *State v. Wonders*, 263 Kan. 582, 590, 952 P.2d 1351 (1993)

6

(quoting *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S. Ct. 2130, 124 L. Ed. 2d 334 [1993]).

We return then to our question: Did the detectives have probable cause to believe that there was contraband in the Explorer? We hold they did. The following excerpt from the transcript of the suppression hearing illustrates why the detectives did not consider these small crystals to be grains of salt:

"Q.     Okay. And when Mr. Callahan got out of his vehicle to walk back to yours what did Mr. Callahan do with his door?

"A.     He left it open, didn't make any effort to close it.

"Q.     Were you at some point advised by Detective Lasswell that he had observed something in the vehicle that he wanted you to look at?

"A.     Yes.

"Q.     What was that?

"A.     He told me he could see methamphetamine on the driver's seat, and I walked over there and looked, and appeared to be methamphetamine, a small piece of it, sitting on the driver's seat.

"Q.     Was that the same driver's seat that Mr. Callahan had just vacated?

"A.     Yes.

"Q.     And what you saw in the seat, how would you describe that in relation to what your experience has been pertaining to methamphetamine in the Franklin County area?

"A.     I would describe it as a, probably a—mostly in Franklin County methamphetamine comes in the form of crystals, crystal methamphetamine, sometimes referred to as ice 'cause it looks like a shard of ice. It looked like maybe a moderate size shard of ice or what's common in this area.

"Q.     So when you looked at it did it seem obvious to you what it was at the time you saw it?

"A.     Yes.

"Q.     Do you have any idea if that item was collected?

"A.     It was. Shortly thereafter it was collected, but then it was consumed during field testing.

7

"Q.     Did you do the field testing or did someone else?

"A.     I think Detective Lasswell did.

"Q.     Were you present when the field testing results were found?

"A.     I was there, I'm sure I was, but I don't specifically remember him actually breaking the ampoules and looking at the test.

"Q.     After that small piece of what you believed to be methamphetamine was found in the seat was there anything else you did?

"A.     After that was found and it was field tested I assisted Detective Lasswell in searching the vehicle.

"Q.     Okay. Was anything else located in the vehicle?

"A.     Detective Lasswell located a small plastic bag with what appeared to be crystal methamphetamine in it.

"Q.     So you didn't find anything else then?

"A.     I did not, no."

Both of the detectives testified that they were trained to investigate crimes involving methamphetamine possession. Clearly, their description of methamphetamine usually found in Franklin County that is listed above demonstrates knowledge that is acquired from training and experience. They knew the difference between salt and methamphetamine. When Detective Lasswell saw the substance, he knew it was contraband.

The Supreme Court, in a case dealing with marijuana possession, upheld a similar ruling. In *State v. Graham*, 273 Kan. 844, 847, 46 P.3d 1177 (2002), while standing outside the defendant's car, an officer saw "'[p]ieces of green vegetation, not large'" on the front passenger floorboard of the defendant's car. The officer indicated that based on his training and experience, there was a good possibility that it was marijuana. The officer could distinguish the marijuana fairly easily against the car's black carpet. The officer incorrectly believed he could search the car incident to arrest. The officer got in the car and confirmed his suspicions. He noticed more marijuana in the car and could smell burnt marijuana. The court held that although the officer did not have authority to

8

search the car incident to arrest, the officer observed and had reasonable cause to believe the vegetation was marijuana before he got in the car. 273 Kan. at 845, 847-49. Here, we note that Callahan had been parked outside of a house where the detectives suspected drug activity.

We hold there was probable cause with exigent circumstances here and the search of Callahan's car was legal. We now turn to the question of the sufficiency of the evidence.

The jury convicted Callahan of possession of methamphetamine and possession of drug paraphernalia. "'Possession of a controlled substance requires having control over the substance with knowledge of and an intent to have such control.' [Citation omitted.]" *State v. Johnson*, 33 Kan. App. 2d 490, 502, 106 P.3d 65 (2004). Possession may be immediate and exclusive, jointly held with another, or constructive when the defendant has some measure of access and a right of control. *State v. Boggs*, 287 Kan. 298, 313, 197 P.3d 441 (2008).

The State can prove possession with circumstantial evidence. See *State v. Washington*, 244 Kan. 652, 654, 772 P.2d 768 (1989); *State v. Anthony*, 242 Kan. 493, 502, 749 P.2d 37 (1988); *State v. Marion*, 29 Kan. App. 2d 287, 290, 27 P.3d 924, *rev. denied* 272 Kan. 1422 (2001). Factors establishing possession include: "[a] defendant's proximity to the area where the drugs were found, the fact that they were in plain view, the proximity of his belongings to the drugs, and his previous participation in the sale of drugs." *Anthony*, 242 Kan. at 502-03. Additional factors include a defendant's incriminating statements and suspicious behavior. *State v. Beaver*, 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009).

There was sufficient evidence to sustain Callahan's conviction for possession. Callahan was the sole occupant of the Explorer. He had exclusive control of the vehicle at

the time he was stopped. The drugs were within arm's reach of Callahan in the vehicle. The drugs were not in plain view, but there were specks in plain view of what appeared to be the same substance on the driver's seat of the car. When asked about the drugs in the cigarette pack, Callahan speculated that the man who was in his car discussing the sale of the SUV may have left it. But one of the detectives testified that the cigarette pack was stuffed down between the center console and passenger seat; it could not just have fallen out of someone's pocket. Callahan did not present evidence of any other person's access to the car.

Just hours before he was stopped by the detectives, Callahan sent the following text messages: '"I need a HG in an hour or two,"' and, '"Hey, can I head that way now? Are you at your house?"' The detectives testified that in their experience, an "HG" means a half gram of methamphetamine. Callahan did cooperate with the detectives. But Callahan told the detectives that he knew he should not have gone to that house. The detectives had received calls from neighbors who suspected there was drug activity at the house.

All of this evidence, taken together, supports that Callahan had knowledge of and intent to control the methamphetamine found in his vehicle. There was sufficient circumstantial evidence to find Callahan guilty beyond a reasonable doubt.

*We approve of the detectives seeking a search warrant for the cell phone.*

Callahan contends that the application for the search warrant of his cell phone alleged insufficient facts to support a reasonable inference that incriminating evidence of drug possession would be present on his phone. In his view, the affidavit simply alleged that generally drug dealers and users use their phones to sell drugs and maintain related records. We are more impressed with the fact that the detectives asked for a search warrant rather than what was contained in their affidavit for a search warrant. The

10

practice of seeking a warrant before attempting to search is favored. *State v. Malm*, 37 Kan. App. 2d 532, 548, 154 P.3d 1154 (2007).

For our part, when there is a challenge to a search warrant affidavit on appeal, we apply a deferential standard. We do not look at the affidavit to see if we think there is probable cause, we look at the affidavit to see if it is reasonable that a detached magistrate thought it provides probable cause. We must answer the question whether

> "the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard.' [Citation omitted.]" *State v. Hensley*, 298 Kan. 422, 427-28, 313 P.3d 814 (2013).

We note that the district court disagreed with Detective Hawkins' contention that a cell phone sitting in a car next to a controlled substance is enough to obtain a search warrant. But the court did hold that there was probable cause in the affidavit because there were drugs found in the vehicle and Callahan had denied knowledge of the drugs. Thus, the search of Callahan's phone was reasonable to prove or disprove Callahan's knowledge or intent to possess drugs.

The court noted that Callahan had an innocent explanation for being at that particular house and indicated to the detectives that he had used his phone to see about buying a car. Thus, the phone would determine whether he had a legitimate innocent reason for being at the house or whether he intended to possess the drugs.

The exclusionary rule of the Fourth Amendment to the United States Constitution may be used to bar the use of evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate in four instances:

11

(1) the magistrate issuing the warrant was deliberately misled by false information;

(2) the magistrate wholly abandoned his or her detached or neutral role;

(3) there was so little indicia of probable cause contained in the affidavit that it was entirely unreasonable for the officers to believe the warrant was valid; or

(4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized.

*State v. Powell*, 299 Kan. 690, 700, 325 P.3d 162 (2014) (citing *United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 82 L. Ed. 2d 677, *reh. denied* 468 U.S. 1250 [1984]). We see no evidence in this record on appeal that would support any of the four exceptions listed above.

In our view, the good faith exception controls here. The *Leon* good faith exception applies when an affidavit does not supply a substantial basis for the determination of probable cause but does provide some indicia of probable cause sufficient to render official reliance reasonable. *State v. Daniel*, 291 Kan. 490, 498-500, 242 P.3d 1186 (2010), *cert. denied* 563 U.S. 945 (2011).

Callahan had admitted to the detectives that he had used the cell phone to make arrangements to possibly buy a vehicle at the house where the detectives were watching. The detectives pointed out to the court that drug users frequently use cell phones to make arrangements to purchase drugs.

We hold that Callahan's text messages obtained from the search of his cell phone according to a search warrant were admissible.

12

Callahan fails to convince us that the text messages were irrelevant. Generally, all relevant evidence is admissible. K.S.A. 60-407(f). Relevant evidence is evidence having any tendency to prove a material fact. K.S.A. 60-401(b). Evidence is material when the fact it supports is in dispute or at issue in the case. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014).

The text messages sent on the day Callahan was arrested were relevant. Callahan's intent to possess methamphetamine was at issue. The text messages sent from Callahan's phone hours before the detectives arrested him showed that he intended to possess drugs on that day. After all, the text, using the vernacular, concerned a half gram—and a half gram of methamphetamine was found in the Explorer.

*Callahan's failure to object at trial precludes us from considering his motion in limine.*

Callahan contends the evidence that he was present outside of a suspected drug house was highly prejudicial and its probative value was minimal. In fact, he filed a motion in limine that the court denied, seeking to prevent the State from making such statements. Callahan admits that he made no contemporaneous objection to the admission of this evidence at trial.

K.S.A. 60-404 provides that "[a] verdict . . . shall not be set aside . . . by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection." When the trial court grants or denies a motion in limine and the evidence is introduced at trial, the moving party must object at trial to the admission of the evidence to preserve the issue for appeal. *State v. Houston*, 289 Kan. 252, Syl. ¶ 10, 270-71, 213 P.3d 728 (2009). Because an in limine ruling is subject to change when the case unfolds, a pretrial objection must be contemporaneously renewed during trial or preserved through a standing objection. *State v. Richard*, 300 Kan. 715, 720-21, 333 P.3d 179 (2014).

13

Even though Callahan suggests that we can consider this issue because it involves only a question law on admitted facts, we refrain from doing so. We take our Supreme Court at its word—it has required a specific and timely objection even in cases where an evidentiary claim involved the defendant's constitutional rights. Otherwise, "'these and other caselaw exceptions would soon swallow the general statutory rule.'" *State v. Moore*, 302 Kan. 685, 698, 375 P.3d 275 (2015); see *State v. King*, 288 Kan. 333, 348-49, 204 P.3d 585 (2009).

We affirm Callahan's convictions.

\* \* \* \*

ATCHESON, J., concurring: I concur in the result the majority reaches on each of the issues on appeal and, therefore, agree: (1) Given the evidence presented at the suppression hearing, the search of William Brandon Callahan's motor vehicle did not violate his rights protected in the Fourth Amendment to the United States Constitution; (2) the evidence at trial sufficiently supported the jury's guilty verdicts; (3) the messages recovered from Callahan's telephone were properly admitted as evidence at trial; and (4) Callahan failed to preserve for review any objection to testimony from law enforcement officers that he was seen in the vicinity of a "drug house."