NOT DESIGNATED FOR PUBLICATION

No. 121,274

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

COLE BOWEN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed July 2, 2020. Affirmed.

*Christopher M. Joseph* and *Carrie E. Parker*, of Joseph, Hollander & Craft LLC, of Topeka, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before LEBEN, P.J., SCHROEDER, J., and LAHEY, S.J.

PER CURIAM: The State charged Cole Bowen with one count of possession of methamphetamine with intent to distribute and one count of unlawfully possessing drug paraphernalia with intent to use it to distribute a controlled substance. Bowen filed a motion to suppress prior to trial, but the district court denied the motion. The case proceeded to trial, and Bowen was found guilty of both counts.

Bowen appeals the district court's denial of his motion to suppress and challenges the sufficiency of the evidence at trial. We find no error in the district court's denial of the

1

motion to suppress. We also find the evidence presented by the State was sufficient to support conviction of the charges and affirm Bowen's convictions.

FACTUAL AND PROCEDURAL BACKGROUND

There is little if any dispute about the facts presented at trial, which consisted of the testimony of two officers involved in executing the search warrant and seizing the evidence admitted at trial. At approximately 4 p.m. on September 7, 2018, Emporia police officers and Lyon County Sheriff's Office deputies executed a search warrant at a residence on Whittier Street, the residence of Bowen and Amanda Alvarado. Bowen's residence was one of three locations where search warrants were executed on that day. Officer Dominick Vortherms participated in the execution of the warrant. He testified Alvarado and two minor children were present at the time the warrant was executed. Bowen was not at the house, and although the house had been under surveillance for some portion of the day, there were no sightings of him. Vortherms was not part of the surveillance team but believed only the front of the house was under surveillance. He did not know if anyone entered the residence during the period of surveillance. He was also unable to recall what time Alvarado told him Bowen had left the house.

Vortherms started his search of the house in what he characterized as an "adult bedroom," which he concluded was Alvarado and Bowen's. The room contained male and female adult clothing, separate dressers, and what he believed to be a medicine or makeup table. In another bedroom, he observed "toys and kid-like items," and he presumed that room to be the children's.

The dresser in the south portion of the adult bedroom contained socks and adult male clothing. In the drawers, Vortherms discovered three bags of methamphetamine containing a combined weight of 2.3 grams and two used methamphetamine pipes. He also found pay stubs in Bowen's name in the same drawer of the dresser.

2

Vortherms continued to search under the bed, mattresses, and north side dresser, which had female clothing inside. In the dresser, he located a document with Alvarado's name on it. He then searched through the only closet in the room. Vortherms testified the closet contained both male and female clothing hanging inside and two shelves. He moved the top shelf so anything on it would fall towards him, and a hat and a "purple or pink" zippered pouch fell down to him. Inside the pouch was a digital scale with residue and a bag of methamphetamine weighing 27.2 grams. He did not recall what, if anything, was on the lower shelf.

Vortherms did not obtain any fingerprint analysis or DNA evidence from the zippered pouch, digital scale, or bags of methamphetamine. He remembered a drawer, perhaps in the kitchen, having plastic bags inside but did not seize them. He also did not recover any type of ledgers of sale or other sorts of packaging/instrumentalities of sale. The KBI also did not test the digital scale for residue.

Officer Kelly Davis, whose affidavit served as the basis for the search warrant, testified about his experience and his responsibilities during the execution of the search warrant. He was not involved in the search of the bedroom and did not find any other contraband in any of the locations he searched.

The search warrant was issued on the basis of information provided by a confidential informant (C.I.). In his pretrial motion to suppress, Bowen argued the affidavit was insufficient to prove probable cause due to lack of information supporting the C.I.'s credibility and the failure of police to corroborate the C.I.'s statements. The motion to suppress was denied, and at trial Bowen was granted a continuing objection to all evidence obtained from the search warrant. At the conclusion of the trial, Bowen was found guilty of possession with intent to distribute methamphetamine and possession of paraphernalia with the intent to use it to distribute methamphetamine.

Bowen timely appeals.

## I.   DID THE DISTRICT COURT ERR IN DENYING THE SUPPRESSION MOTION?

On appeal, Bowen argues the evidence recovered during the execution of the search warrant should have been excluded because the judge who issued the search warrant did not have a substantial basis to conclude probable cause existed. In the alternative, Bowen also contends even if probable cause existed when the search warrant was originally issued, the probable cause ceased to exist before the warrant was executed. The State argues the judge had a substantial basis for finding probable cause, and it contends even if the basis is lacking, the items seized should not be suppressed because the officers acted in good-faith reliance on the warrant.

> "In determining whether probable cause exists to support a search warrant, the task of the issuing [judge] is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of any person supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Hicks*, 282 Kan. 599, Syl. ¶ 1, 147 P.3d 1076 (2006).

*Standard of Review*

> "When an affidavit in support of an application for search warrant is challenged, the task of the reviewing court is to ensure that the issuing magistrate had a substantial basis for concluding probable cause existed. This standard is inherently deferential. It does not demand that the reviewing court determine whether, as a matter of law, probable cause existed; rather, the standard translates to whether the affidavit provided a substantial basis for the magistrate's determination that there is a fair probability that evidence will be found in the place to be searched. Because the reviewing court is able to evaluate the necessarily undisputed content of an affidavit as well as the issuing

4

magistrate, the reviewing court may perform its own evaluation of the affidavit's sufficiency under this deferential standard." 282 Kan. 599, Syl. ¶ 2.

Aside from the potential items sought in the search, the affidavit in this case contained the following information:

"Kelly R. Davis 217, of lawful age, being first duly sworn on oath, deposes and says:

"That I am a police officer for the City of Emporia, Kansas, and am so commissioned this 7th day of September, 2018. I am currently investigating a violation of K.S.A. 21-5705(a)(a1) Possession of Methamphetamine with the intent to distribute.

"On 09-07-2018 officers arrested a person who agreed to cooperate with the police, who for the purpose of this report will be listed as . . . C.I.

"At the time of C.I.'s arrest, C.I. was carrying approximately one and a half pounds of crystal Methamphetamine (685 grams). [Approximately weight at time of seizure.] C.I. was also carrying bags, digital scales, and drug Paraphernalia.

"After arresting C.I., officers learned C.I. had traveled to Kansas City and picked up a large quantity of Methamphetamine [approximately a kilo or 2.2 pounds] and brought it back to Emporia. C.I. left Kansas City at approximately 0400 hours on 09-07-2018 after being in Kansas City for 30-45 minutes. C.I. purchased the Methamphetamine for $7,000.00 in U.S. currency.

"After returning to Emporia on 09-07-2018 at approximately 0630 hours, C.I. dropped off approximately one ounce of Methamphetamine to Cole Christopher Bowen W/M . . . and Cole Bowen's girlfriend, Amanda Renee Alvarado W/F . . . . C.I. reports meeting with Bowen and Alvarado and splitting up the ounce out of the large bag of Methamphetamine C.I. was carrying when C.I. was arrested.

"C.I. made positive identification of both Bowen and Alvarado. C.I. also identified the house C.I. had dropped off the ounce at. That address is commonly known as . . . Emporia, Lyon County, Kansas. Bowen was last arrested in Emporia, Kansas on 07-27-2018 and at that time he reported his address to be . . . Emporia, Lyon County, Kansas.

"The computer at the Emporia Police Department shows Bowen's address has been listed at that location since 07-07-2016. The computer at the Emporia Police Department shows Amanda Alvarado lists an address of . . . Emporia, Lyon County, Kansas as of 03-19-2018. I have seen vehicles registered to both Cole Bowen and Amanda Alvarado at this address.

"C.I. was cooperating with the police for leniency regarding two cases of selling Methamphetamine within 1000 feet of a school.

"According to C.I.'s Kansas Criminal Justice Information system (KCJIS) C.I.'s past criminal history includes convictions for:

- Motor Vehicle Burglary as a juvenile reference Lyon County District Court case 97JV550
- Disorderly Conduct as a juvenile reference Lyon County District Court case 99JV87
- Disorderly Conduct in Emporia Kansas Municipal Court reference court case C002289
- Driving While Suspended through the Emporia Kansas Municipal Court reference court case C05-1296
- Sale or Possession w/intent to sell opiates reference Lyon County District Court case 2006CR531
- Burglary of a non-dwelling through Lyon County District Court case 09CR121
- Possession depressants, stimulants, hallucinogen, controlled substance, anabolic steroid reference Lyon County District Court case 09CR411
- Violate controlled substance laws via Communications facility

6

- Conspiracy to cultivate, distribute, with the intent to distribute opiates, opium, narcotics, stimulants with one prior conviction."

Bowen correctly argues there is no direct information in the affidavit supporting the veracity of the C.I. or the information he provided, and the only information independently corroborated by the police was Bowen and Alvarado's address. Police confirmed Bowen's address through Emporia police department records and motor vehicle records. Bowen, citing *State v. Landis*, 37 Kan. App. 2d 409, 156 P.3d 675 (2007), argues that since the C.I. was a participant in the crime and was seeking leniency, "information regarding the [C.I.'s] credibility and veracity, as well as corroboration of the person's statements, are necessary to establish probable cause for a search warrant."

Unlike when an unquestionably honest citizen provides information, "when the person providing the information was a participant in the crime under investigation or has been implicated in another crime and is acting in the hope of gaining leniency," there is no presumption of reliability in the information provided. *Landis*, 37 Kan. App. 2d at 418-19. In *Landis*, the informant was arrested with marijuana in her car which she told police she had just purchased from Landis. Police used that information to obtain a search warrant for Landis' residence. Landis argued the affidavit had no information establishing the informant's veracity. In finding the search warrant was issued without probable cause, the *Landis* panel found police corroboration of only the location of defendant's residence was insufficient to establish the informant's reliability or credibility. 37 Kan. App. 2d at 419-20. Here, the C.I. was both implicated in the crime and acting in the hope of leniency. As a result, there is no presumption of reliability in the information he provided.

As in *Landis*, there was no indication that officers had an established relationship with the C.I. or any other reason to believe he was a credible source. Similar to *Landis*, the only information provided by the C.I. that was independently corroborated by the

police was Bowen's address, which *Landis* held "was simply inadequate to establish [the informant] was a reliable source." See 37 Kan. App. 2d at 420.

The State concedes "there is an absence of police corroboration in the search warrant affidavit" but contends there are other circumstances that suggest truthfulness and reliability that do not require corroboration. It argues the C.I. subjected himself to potential criminal liability for a new crime by providing the information in the affidavit when he described his delivery of drugs to Bowen and Alvarado, suggesting veracity and reliability. See *State v. Adams*, 294 Kan. 171, 182, 273 P.3d 718 (2012). In *Adams*, an informant provided uncorroborated information which formed the basis for a search warrant of a residence jointly occupied by the informant and defendant. The *Adams* court reasoned:

> "[T]his case is distinguishable from *Landis* in that the search warrant was for [the informant's] residence. [The informant] was not merely pointing a finger in the direction of a tenuous third party; she was leading the officers to evidence that had the potential of fortifying or adding to charges the State could bring against her. This circumstance suggests veracity and reliability. Under these circumstances, additional information regarding [the informant's] veracity and reliability was not necessary." *Adams*, 294 Kan. at 182.

Since *Adams*, the Kansas Supreme Court has explained: "[T]he probative value of a tip is determined using the totality of the circumstances as articulated in *Illinois v. Gates*, 462 U.S. 213, 232, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)." *State v. Hensley*, 298 Kan. 422, 431, 313 P.3d 814 (2013). Under this approach, an "informant's veracity and basis of knowledge remain relevant but do not have 'independent status,' meaning 'a deficiency in one may be compensated for . . . by a strong showing as to the other, or by some other indicia of reliability.'" 298 Kan. at 431; see also *Gates*, 462 U.S. at 234 (noting even if informant has questionable motives, tip is entitled to greater weight if informant provides detailed, first-hand description of incriminating items or events).

8

In *Hensley*, the affidavit lacked police corroboration of information provided by the informant. The Kansas Supreme Court looked at other indicia of reliability, which included the informant's personal observation of several pounds of marijuana and a large amount of money hidden in the defendant's freezer the previous day, a description of where the defendant slept, the caliber of gun the defendant possessed, and the location of a secret hiding place in defendant's home. 298 Kan. at 431-32. The informant also identified herself, which could have subjected her to potential prosecution.

Here, although somewhat less detailed than the information in *Hensley*, the affidavit provides a first-hand description of delivery of a specified amount of methamphetamine to Bowen and Alvarado at their residence shortly before the warrant was obtained. Unlike *Hensley*, the C.I. here was cooperating in exchange for leniency in two cases. But an informant's questionable motives do not necessarily prohibit reliance on information supplied by the informant. See *Hensley*, 298 Kan. at 432.

Ultimately, we find the facts of this case distinguishable from *Landis.* Although there is no presumption of reliability in the information provided by C.I. and the affidavit corroborates only Bowen's address, we find the totality of circumstances provided a substantial basis for the issuing judge to conclude probable cause existed. Unlike the informant in *Landis*, the C.I. did not give multiple inconsistent stories when talking with the police. The officer here did not exclude or hide any relevant information—the affidavit includes the C.I.'s criminal record and informs the judge that the C.I. was cooperating in exchange for leniency. Keeping in mind that the inquiry before the judge is whether, under all the circumstances, there is a fair probability that contraband will be found in a particular place, the affidavit alleges the C.I. personally delivered the drugs to Bowen and Alvarado just hours before the warrant was issued. This information is probative of the drugs being at the location to be searched. And, as noted, the information potentially subjected the C.I. to further criminal liability—a circumstance suggesting veracity and reliability. Although we acknowledge it is a close call, we conclude this

9

other information is sufficiently strong to compensate for the lack of corroboration of the C.I.'s information and credibility.

"[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Evaluating the information contained only in the affidavit, we conclude the affidavit provided a substantial basis for the judge's determination there was a fair probability that methamphetamine would be found at the Bowen/Alvarado house on September 7, 2018.

*Dissipation of probable cause*

Another search warrant was issued at the same time as Bowen's but executed before Bowen's. Bowen alleges when the other warrant was served, police did not find the contraband the C.I. led them to believe would be present. He contends this information undercut the C.I.'s credibility and any existing probable cause dissipated as a result.

In some circumstances, new information developed after a warrant has been issued may lead to a dissipation of probable cause. See *United States v. Grubbs*, 547 U.S. 90, 95 n.2, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006). The 10th Circuit Court of Appeals held that "probable cause becomes stale when new information received by the police nullifies information critical to the earlier probable cause determination before the warrant is executed." *United States v. Dalton*, 918 F.3d 1117, 1128 (10th Cir. 2019).

We have no evidentiary basis to evaluate whether the results of the other warrant for another location was "critical" to a determination of probable cause in Bowen's case. The details of the other warrant and affidavit are not part of the record, nor are the details of the search or its results. There was some limited argument before the district court but,

insofar as we can determine from the record, no evidentiary presentation was made. In addressing the argument, the district court found the other search to be irrelevant "because there's so many intervening circumstances that could occur after a search warrant is issued [and] before it's served . . . drugs could be added to the house, drugs could be taken out of the house." We note in the record that Bowen obtained a court order granting access to the other warrant, but it is not included in the record. "[T]he appellant has the duty to properly designate the record" and when the appellate record is inadequate, as here, we "presume that the district court's findings were properly supported." *State v. McMullen*, 290 Kan 1, Syl. ¶ 1, 221 P.3d 92 (2009). Under the facts as they appear in the record, we find no merit in Bowen's dissipation of probable cause contention.

*Good-Faith Exception*

The district court found that even if there was not a substantial basis to support a probable cause finding, the evidence would be admissible under the good-faith exception to the exclusionary rule. We agree.

"In *Leon*, the United States Supreme Court held the exclusionary rule should not bar the use of 'evidence obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be unsupported by probable cause.'" *State v. Powell*, 299 Kan. 690, 700, 325 P.3d 1162 (2014) (quoting *United States v. Leon*, 468 U.S. 897, 900, 104 S. Ct. 3405, 82 L. Ed. 2d 677 [1984]). However, the *Leon* Court recognized four exceptions

> "when suppression would still be an appropriate remedy if a warrant was later determined
> to be invalid:  (1) The magistrate issuing the warrant was deliberately misled by false
> information; (2) the magistrate wholly abandoned his or her detached or neutral role; (3)
> there was so little indicia of probable cause in the affidavit that it was entirely

11

unreasonable for the officers to believe the warrant was valid; or (4) the warrant so lacked specificity that officers could not determine the place to be searched or the items to be seized." *Powell*, 299 Kan. at 700.

See *Leon*, 468 U.S. at 923; see also *State v. Hoeck*, 284 Kan. 441, 463-64, 163 P.3d 252 (2007) (adopting without modification *Leon* exceptions for "suppression of evidence illegally seized based on good-faith reliance on invalid warrant").

Bowen believes the third exception should apply in his case. He argues the district court erred in applying the good-faith exception because it was unreasonable for the police officers involved to believe the warrant was valid. Bowen claims the officers willfully ignored circumstances that negated the reliability of the foundation of the warrant. "A law enforcement officer should understand the broad precepts implicated in a Fourth Amendment search and should recognize an obviously deficient warrant. Good faith is an objective standard measured by how a reasonable law enforcement officer would view the circumstances." *State v. Malone*, 50 Kan. App. 2d 167, 178, 323 P.3d 188 (2014).

"To evaluate whether it was entirely unreasonable for the officers to believe the warrant was valid, we must determine 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.' *Leon*, 648 U.S. at 922 n.23 . . . .

"The threshold to avoid the *Leon* good-faith exception is a high one. . . .

"'Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or, as we have sometimes put it, in "objective good faith." Nonetheless, under our precedents, the fact that a neutral magistrate has issued a warrant authorizing the allegedly unconstitutional search or seizure does not end the inquiry into objective reasonableness. Rather, we have

recognized an exception . . . when "it is obvious that no reasonably competent officer would have concluded that a warrant should issue." [Citations omitted.]'" *Powell*, 299 Kan. at 701.

In *Landis*, the police officer who completed the affidavit deliberately omitted pertinent information, and the panel found the officer "acted in bad faith by deliberately omitting material information and misleading the court[.]" 37 Kan. App. 2d at 423. Here, the officer did not purposely omit any information from the affidavit. The affidavit also used Bowen's address to describe the place to be searched and listed the potential contraband and items expected to be found. There is no suggestion that the officer made any effort to mislead the court. The officer was up front about the C.I.'s criminal record, the C.I. had a substantial amount of methamphetamine when he was arrested, and he was cooperating in exchange for leniency in two drug sale cases. The fact the C.I. had methamphetamine when he was arrested potentially adds some credence to his story as well—the officer could reasonably conclude the C.I. had methamphetamine he could have delivered to others. As noted above, there are at least two factors which objectively support probable cause—the warrant was obtained on the same day police obtained C.I.'s information, and the C.I. was providing information "that had the potential of fortifying or adding to charges the State could bring against [him]." See *Adams*, 294 Kan. at 182.

Bowen also contends the officers could not believe the warrant was valid because it was based on a single drug transaction and there was no reasonable basis to believe drugs remained at the Bowen/Alvarado address. He argues: "For forty years, Kansas law has required additional facts indicating the drugs remained on the premises after an isolated drug sale before probable cause to search the premises may be found[.]" He contends this is a single isolated drug transaction that is insufficient to support probable cause and any reasonably well-trained officer would know it.

13

In support of his argument, Bowen quotes from *State v. Jacques*, 225 Kan. 38, 42, 587 P.2d 861 (1978):

> "A protracted or continuous course of drug traffic at a particular location unquestionably would support the determination of probable cause. However, a single isolated drug sale might also have been sufficient to support the determination if such sale had occurred recently, and additional facts had been established to provide some reasonable basis to infer drugs remained on the premises after the sale."

But the sentence immediately following the foregoing quote places it in context: "The lapse of time which would tend to remove all probable cause for issuance of a search warrant by destroying any reasonable belief that drugs remain on the premises will depend on the facts and circumstances of each particular case." *Jacques*, 225 Kan. at 42. The *Jacques* court found a two-day lapse of time did not remove a reasonable belief that drugs remained on the premises. 225 Kan. at 42. Here, the warrant was obtained and executed promptly, on the same day the police received the information from the C.I. The short lapse of time in this case supports, rather than destroys, an officer's reasonable belief that drugs were on the premises. Even if we had concluded there was not a sufficiently strong showing of other factors to overcome the near complete absence of corroboration of the C.I.'s information, it was not entirely unreasonable for the officers to believe the warrant was valid.

"[T]he sole purpose of the exclusionary rule is 'to deter future Fourth Amendment violations.' *Davis v. United States*, 564 U.S. 229, 236-37, 131 S. Ct. 2419, 180 L. Ed. 2d 285 (2011)." *Powell*, 299 Kan. at 705. The *Davis* Court noted the exclusionary rule has never been applied "to suppress evidence obtained as a result of nonculpable, innocent police conduct." 564 U.S. at 240. There is no indication the officers involved in this case did anything wrong or unreasonable in obtaining the judge's approval of the warrant, and it was not unreasonable for the officers to believe the warrant was valid. Thus, we find

the evidence would be admissible under the good-faith exception even in the absence of probable cause. The district court did not err in denying Bowen's motion to suppress.

## II.     WAS THERE SUFFICIENT EVIDENCE TO SUPPORT THE JURY VERDICT?

Bowen advances two arguments in his sufficiency of the evidence challenge. First, because he was not in exclusive possession of the residence, Bowen contends that other incriminating circumstances must link him to the methamphetamine and the digital scale, and he contends the State must prove more than one incriminating factor links Bowen to the methamphetamine in the closet. Second, he argues any incriminating circumstances must be proved by facts rather than implied. He contends the State impermissibly stacked inference upon inference to prove its case.

The State contends there was sufficient incriminating evidence linking Bowen to the drugs found in the residence. It notes Bowen's pay stubs and clothing were located in the same dresser drawer as a portion of the methamphetamine and argues:  "This is sufficient for the jury to conclude that at a minimum he exercised joint control over the methamphetamine in the closet that contained men's clothing."

*Standard of Review*

"'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

"'"A conviction of even the gravest offense can be based entirely on circumstantial evidence and the inferences fairly deducible therefrom. If an inference is a reasonable

15

one, the jury has the right to make the inference."'" *State v. Rosa*, 304 Kan. 429, 433, 371 P.3d 915 (2016). Possession and intent, like any element of a crime, may be proved by circumstantial evidence. *State v. Marion*, 29 Kan. App. 2d 287, 290, 27 P.3d 924, *rev. denied* 272 Kan 1422 (2001).

The State charged Bowen with one count of possession of methamphetamine with intent to distribute. See K.S.A. 2019 Supp. 21-5705(a)(1) and (d)(3)(C). This charge required the State to prove Bowen knowingly possessed at least 3.5 grams of methamphetamine—the methamphetamine in both the dresser and the closet. The State also charged him with one count of knowingly possessing the digital scale with intent to use it to distribute a controlled substance. See K.S.A. 2019 Supp. 21-5709(b)(1) and (e)(2)(A).

"'Possession' means having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." K.S.A. 2019 Supp. 21-5701(q).

> "Possession of a controlled substance requires specific intent to exercise control over the substance, with knowledge of the nature of the substance. The possession of a controlled substance may be immediate and exclusive, jointly held with another, or constructive as where the drug is kept by the accused in a place to which he or she has some measure of access and right of control. Proof of the required elements for possession of a controlled substance may be established by circumstantial evidence." *State v. Keel*, 302 Kan. 560, Syl. ¶ 1, 357 P.3d 251 (2015).

But "[w]hen a defendant is in nonexclusive possession of the premises upon which drugs are found, it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs." *Marion*, 29 Kan. App. 2d at 290. Stated another way, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other

16

incriminating circumstances. "Although we allow the State to prove knowledge and intent by circumstantial evidence, when a defendant is in *nonexclusive* possession of the premises on which illegal drugs are found, the mere presence of or access to the drugs, standing alone, is insufficient to demonstrate possession absent other incriminating circumstances." *Rosa*, 304 Kan. at 434.

> "Other circumstances which have been held sufficiently incriminating to link a defendant with illicit drugs in a vehicle are his previous participation in the sale of drugs, his use of narcotics, his proximity to the area where drugs are found and the fact the drugs are found in plain view. While none of these circumstances, by itself, may be sufficient to support a conviction, taken together they provide a sufficient inference of knowing possession to support the verdict." *State v. Faulkner*, 220 Kan. 153, 160, 551 P.2d 1247 (1978).

While the rule pronounced in *Faulkner* applied to vehicles, courts have applied the factors to cases involving nonexclusive possession of a premises. See *Marion*, 29 Kan. App. 2d at 290; *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233 (1991). ""Other factors noted in cases involving nonexclusive possession include incriminating statements of the defendant, suspicious behavior, and proximity of defendant's possession[s] to the drugs." [Citation omitted.]' 15 Kan. App. 2d at 489." *Marion*, 29 Kan. App. 2d at 290.

PIK Crim. 4th 57.040 is the pattern instruction for possession of a controlled substance. The instruction includes the following language:

> "'Possession' means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control.

> "[When a defendant is in nonexclusive possession of (the premises upon) (an automobile in) which a controlled substance is found, it cannot be inferred that the

17

defendant knowingly possessed the controlled substance unless there are other circumstances linking the defendant to the controlled substance. You may consider all factors supported by the evidence in determining whether the defendant knowingly possessed the controlled substance, including the following:

"1. whether the defendant previously participated in the sale of a controlled substance;

"2. whether the defendant used controlled substances;

"3. whether the defendant was near the area where the controlled substance was found;

"4. whether the controlled substance was found in plain view;

"5. whether the defendant made any incriminating statements;

"6. whether the defendant's behavior was suspicious;

"7. whether the defendant's personal belongings were near the controlled substance.]"

No evidence was presented on any factor except the last one—there was circumstantial evidence that Bowen's belongings were near the controlled substance. But the jury is free to consider all the circumstances linking the defendant to the controlled substance, not only the ones specifically listed in this pattern jury instruction.

Looking at the evidence in the light most favorable to the State, as we are required to do on a sufficiency challenge, *Chandler*, 307 Kan. at 668, we find the circumstances provided a sufficient basis for the jury to conclude Bowen possessed both the methamphetamine in the dresser and that in the bedroom closet.

The jury could easily conclude that Bowen possessed the 2.3 grams of methamphetamine and the two used meth pipes found in the dresser drawer. In a bedroom occupied by a man and a woman, with two dressers, these items were found in a dresser that contained only men's clothing. And Bowen's pay stubs were found in the same drawer as the meth and pipes.

18

Of course, the State chose to charge Bowen with an offense requiring that he knowingly possessed not just those 2.3 grams; the charge required that he possessed at least 3.5 grams. Another 27.2 grams of meth and a scale were found on a closet shelf in the same bedroom, and the jury found that Bowen possessed at least 3.5 grams overall. So the jury had to conclude that he was at least in knowing joint possession of the meth in the closet. And the jury concluded that Bowen possessed the scale, which was the basis for a separate charge.

The jury's conclusions are supported by several facts: (1) The only meth pipes found by the police were in Bowen's dresser drawer; (2) the only meth found by the police outside the closet was in Bowen's dresser drawer; (3) both Bowen and Alvarado had clothes and personal items in the closet; and (4) Bowen had joint control of the house. See *Rosa*, 304 Kan. at 435. Based on those facts it is reasonable to conclude that Bowen at least jointly possessed the meth and the scale found in the closet.

Bowen also argues the "inference stacking" involved in reaching the conclusion the methamphetamine in the closet belonged to him is prohibited by our Supreme Court. "Presumption and inferences may be drawn only from facts established, and presumption may not rest on presumption or inference on inference." *State v. Doyle*, 201 Kan. 469, 488, 441 P.2d 846 (1968); see *State v. Williams*, 229 Kan. 646, 649-650, 630 P.2d 694 (1981).

But "[i]mpermissible inference stacking is not present where different circumstances are used to support separate inferences or where multiple pieces of circumstantial evidence separately support a single inference." *State v. Banks*, 306 Kan. 854, Syl. ¶ 3, 397 P.3d 1195 (2017). Here, as we have already summarized, several pieces of circumstantial evidence taken together support the inference that Bowen possessed at least 3.5 grams of meth and the scale found in the closet. The men's clothing and pay stubs provided circumstantial evidence that the meth and pipes in the drawer were

19

Bowen's. All of the items we listed previously—the only meth and meth pipes found in the house were Bowen's, Bowen had clothes in the closet, and Bowen had joint control of the house—each support the inference that Bowen at least jointly possessed the items found in the closet. So there is no impermissible inference stacking required.

We do not reweigh evidence, independently evaluate the credibility of witnesses, or make our own factual conclusions. Our role is much more limited—we determine if, on the basis of the evidence presented during the trial viewed in a light most favorable to the State, a reasonable fact-finder could conclude beyond a reasonable doubt that Bowen committed the drug offenses with which he was charged. See *Chandler*, 307 Kan 657, Syl. ¶ 2. Under that standard, we conclude the evidence was sufficient in this case.

Affirmed.