NOT DESIGNATED FOR PUBLICATION

No. 121,112

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOEL DEAN COLLINS,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; C. WILLIAM OSSMANN, judge. Opinion filed March 12, 2021. Affirmed.

*Caroline M. Zuschek*, of Kansas Appellate Defender Office, for appellant.

*Stephen J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., ATCHESON and SCHROEDER, JJ.

PER CURIAM: Joel Dean Collins appeals his convictions and sentences for possession of methamphetamine, possession of drug paraphernalia, and interference with law enforcement. Collins raises several issues relating to search and seizure, jury instructions, cumulative trial errors, and sentencing. Upon our review, we hold the district court did not err in its jury instructions or commit cumulative error. Regarding Collins' claims relating to search and seizure and sentencing, we conclude these issues were not preserved for appellate review. Accordingly, we affirm the convictions and sentences.

FACTUAL AND PROCEDURAL BACKGROUND

On April 21, 2018, Deputy Matt Boling with the Shawnee County Sheriff's Office was on patrol with his trainee Deputy Jonathan Martens. The officers noticed two men securing a refrigerator on a truck parked at the end of a driveway. Deputy Boling thought it was odd that the truck, loaded with household items which included a refrigerator and a new television, was parked at the end of the driveway. Deputy Boling told Deputy Martens that he recognized the men and he suspected they were engaged in criminal activity. Deputy Martens agreed. Deputy Martens stopped his patrol vehicle and conversed with the men.

The officers identified the men as Collins and Dustin Vandam. Deputy Martens asked them what they were doing. They responded that they had pulled over to pick up the refrigerator, which had "free" taped in large letters on the door.

The officers obtained the men's identification and asked the dispatcher to check for outstanding warrants. The officers discovered that the license tag on the truck was issued to a Cadillac. Vandam explained that he had just purchased the truck and had not yet transferred the registration. The truck's vehicle identification number, however, was not registered to either of the two men.

Within three to five minutes after the officers' arrival, Collins walked behind the truck where the officers could not see him. Deputy Boling asked Collins to stand where he could see him for officer safety. Deputy Boling noticed Collins' hands curled into fists when he reappeared. Collins walked to the end of the truck, stood by a tie-down port, and unclenched his fist, which Deputy Boling interpreted as having dropped something into the tie-down port. Collins stood near the back of the truck.

Several minutes later, Deputy Boling asked Collins to move so he could look inside the hole of the tie-down port. Initially, Collins protested but he relented, and when the deputy peered into the hole, he saw a small plastic baggie with a crystal substance on a ledge inside the truck's frame. Deputy Boling suspected the substance was methamphetamine.

When Deputy Boling saw the baggie, he told Collins to put his hands behind his back. When the deputy tried to handcuff Collins, he resisted, and Collins tried to blow into the port in an apparent effort to dislodge the baggie further into the interior of the truck's frame. Collins yelled to Vandam, "'They found a baggie,'" even though Deputy Boling had not notified anyone he had found anything. Collins continued to resist arrest. During the struggle, Deputy Boling tripped and fell into a ditch, whereupon Collins ran across the street. Collins was ultimately subdued after being stunned by Deputy Boling's Taser. Deputy Boling retrieved the baggie from the tie-down port. Testing showed the bag contained 0.55 grams of methamphetamine.

The State charged Collins with possession of methamphetamine, possession of drug paraphernalia (a baggie), and interference with law enforcement. Before trial, Collins moved to suppress evidence of the baggie of methamphetamine, contending that it resulted from an illegal search and seizure. About a month before trial, after a hearing, the district court denied the motion.

At trial, the jury found Collins guilty of all three charges. At sentencing, the district court determined that his criminal history score was A. Collins did not object to this finding. The court sentenced Collins to a mitigated 37-month sentence for possession of methamphetamine, with concurrent sentences of 5 months' imprisonment for interference with law enforcement, and 6 months in jail for possession of drug paraphernalia.

Collins appeals.

## DENIAL OF MOTION TO SUPPRESS

Collins' first argument on appeal is that the district court erred by denying his motion to suppress evidence of methamphetamine. He candidly acknowledges that he did not object to the admission of the contested evidence at trial, and that ordinarily a defendant must make such an objection to preserve the issue for appellate review. He asserts, however, that two exceptions to the general rule should apply under the circumstances of this case to warrant our review.

Generally, when the district court has denied a pretrial motion to suppress, the moving party must still object to the introduction of that evidence at the time it was offered at trial to preserve the issue for appeal. *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016); K.S.A. 60-404 ("A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous admission of evidence unless there appears of record objection to the evidence timely interposed and so stated as to make clear the specific ground of objection."). "The purpose of the rule is to avoid the use of tainted evidence and thereby avoid possible reversal and a new trial." *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010). When the district court's admissibility ruling occurs before trial, a contemporaneous objection is still required "because the unfolding of a case may require a reevaluation of the reasons for the initial ruling." *Dupree*, 304 Kan. at 62. Finally, our Supreme Court has declined on repeated occasions to consider evidentiary suppression issues on appeal when the defendant failed to preserve the issue with a contemporaneous objection at trial. E.g., *State v. Richard*, 300 Kan. 715, 725-26, 333 P.3d 179 (2014); *State v. Houston*, 289 Kan. 252, 270, 213 P.3d 728 (2009).

4

Collins argues that "the spirit of the preservation rule was met in his case because the suppression hearing was held in front of the same judge as the jury trial, and only approximately one month prior to the trial." Additionally, he asserts that substantially the same facts were presented at the hearing and the trial. The State counters that Collins' failure to object to the evidence at trial precludes him from raising the issue on appeal.

Collins' argument mirrors the reasoning stated in *State v. Gordon*, 219 Kan. 643, 651-52, 549 P.2d 886 (1976), *superseded by statute on other grounds as stated in State v. Murry*, 271 Kan. 223, 21 P.3d 528 (2001), wherein our Supreme Court concluded that an objection made in a posttrial brief after a bench trial was timely because "under the circumstances of [the] case the spirit if not the letter of the contemporaneous objection rule was satisfied." The Kansas Supreme Court has reaffirmed this holding on several occasions, permitting appellate review without a contemporaneous objection at a bench trial. See *State v. Spagnola*, 295 Kan. 1098, Syl. ¶ 1, 289 P.3d 68 (2012); *State v. Kelly*, 295 Kan. 587, Syl., 285 P.3d 1026 (2012); *State v Bogguess*, 293 Kan. 743, Syl. ¶ 1, 268 P.3d 481 (2012).

These cases are inapplicable here, however, because our Supreme Court has never stated that it has relaxed the contemporaneous objection requirement for a jury trial. See *Richard*, 300 Kan. 725-26 (holding that issues raised in motion to suppress were not preserved because defendant did not make contemporaneous objection at jury trial). While Collins' reasoning is similar to that raised in cases dealing with bench trials, we must adhere to Kansas Supreme Court precedent. *Snider v. American. Family Mut. Ins. Co.*, 297 Kan. 157, 168, 298 P.3d 1120 (2013) (holding that our court is duty bound to follow Kansas Supreme Court precedent unless there is some indication that the court is departing from its previous position).

Alternatively, Collins argues that because this error affected his rights under the Fourth Amendment to the United States Constitution, our court may consider

constitutional errors raised for the first time on appeal. But constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018).

Collins then claims an exception to the general rule that a new legal theory may not be asserted for the first time on appeal: consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. See *State v. Johnson*, 309 Kan. 992, 995, 441 P.3d 1036 (2019).

At the outset, the Kansas Supreme Court has "consistently been refusing to review an evidentiary issue without a timely and specific objection even if the issue involves a fundamental right." *Dukes*, 290 Kan. at 487-88. The Supreme Court has emphasized the importance of the legislative mandate contained in K.S.A. 60-404, "which 'dictates that evidentiary errors shall not be reviewed on appeal unless a party has lodged a timely and specific objection to the alleged error at trial.'" *State v. Richmond*, 289 Kan. 419, 428, 212 P.3d 165 (2009) (quoting *State v. King*, 288 Kan. 333, 349, 204 P.3d 585 [2009]). The Supreme Court has also warned that if it were to overlook a contemporaneous objection "and consider the issue because it is necessary to serve the ends of justice or to prevent the denial of [the defendant]'s right to a fair trial, these and other case law exceptions would soon swallow the general statutory rule." *Richmond*, 289 Kan. at 429-30. Most recently, our Supreme Court stated: "Subsequent to *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009), the three judicially recognized exceptions allowing appellate review of issues not raised below have not been applied to absolve a party of K.S.A. 60-404 violations." *State v. Brown*, 307 Kan. 641, Syl. ¶ 2, 413 P.3d 783 (2018).

In summary, Kansas caselaw makes clear that the exception Collins relies on does not apply to permit review of the search and seizure issue because he failed to contemporaneously object to the incriminating evidence at trial. *State v. Sean*, 306 Kan. 963, 971-73, 399 P.3d 168 (2017) (refusing to consider denial of pretrial motion to

6

suppress even though it involved fundamental rights because defendant did not make a contemporaneous objection). Accordingly, we decline to review the propriety of the district court's denial of Collins' motion to suppress.

FAILURE TO INSTRUCT ON CULPABLE
MENTAL STATE FOR POSSESSION OF METHAMPHETAMINE

Next, Collins contends the district court committed clear error in its jury instructions relating to possession of methamphetamine and possession of drug paraphernalia. He presents a two-pronged argument. First, he argues that the district court failed to instruct the jury that a culpable mental state was an element of each crime. Second, he claims the district court failed to define the culpable mental states for the jury.

We begin the analysis with our standard of review:

> "When analyzing jury instruction issues, we follow a three-step process:
>
> '(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal;
>
> (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

At the third step, if the challenging party did not object to the jury instruction at trial, the appellate court applies the clear error standard and will only reverse the conviction if an error occurred and the court is firmly convinced that the jury would have reached a different verdict if the instructional error had not happened. See K.S.A. 2017 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly

erroneous."); 307 Kan. at 317-18. Importantly, the party claiming a clear error has the burden to demonstrate the necessary prejudice. 307 Kan. at 318. Collins did not object to the instructions in the district court, so the clear error standard applies.

Regarding the second step of the process, appellate courts consider whether the instruction was legally and factually appropriate. 307 Kan. at 318. We employ unlimited review to determine whether an instruction was legally appropriate. *State v. Johnson*, 304 Kan. 924, 931, 376 P.3d 70 (2016). In this regard, appellate courts should determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. *State v. Williams*, 303 Kan. 585, 598-99, 363 P.3d 1101 (2016). We will next consider whether the jury instruction given by the district court was legally and factually appropriate.

"[A] culpable mental state is an essential element of every crime." K.S.A. 2017 Supp. 21-5202(a). Evidence that the conduct of the accused person was committed "intentionally," "knowingly," or "recklessly" may establish a culpable mental state. K.S.A. 2017 Supp. 21-5202(a). The terms are defined in Kansas statutes and in the PIK instruction at issue here. K.S.A. 2017 Supp. 21-5202(h)-(j).

Regarding the possession of methamphetamine charge, the district court provided the jury with this instruction:

"Instruction Number 9. The defendant is charged with unlawfully possessing methamphetamine. The defendant pleads not guilty.
"To establish this charge, each of the following claims must be proved:
"1. The defendant possessed methamphetamine.
"2. This act occurred on or about the 21st day of April, 2018, in Shawnee County, Kansas.

"Possession means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." See PIK Crim. 4th 57.040.

Regarding the possession of drug paraphernalia charge, the district court provided the jury with this instruction:

"Instruction Number 12. The defendant is charged with unlawfully possessing drug paraphernalia with intent to use it. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant possessed a baggie with the intent to use it as drug paraphernalia to store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body methamphetamine.

"2. This act occurred on or about the 21st day of April, 2018, in Shawnee County, Kansas.

"Possession means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control." See PIK Crim. 4th 57.100.

Collins argues that neither instruction clearly sets forth a culpable mental state. Instead, the district court should have given the instruction in PIK Crim. 4th 52.010 (Culpable Mental State). This pattern instruction informs the jury that the State must prove the defendant committed a crime intentionally, knowingly, or recklessly. The instruction also defines those three terms as they are defined by K.S.A. 2017 Supp. 21-5202(h)-(i). Of note, the PIK Committee states in the "Notes on Use" following the instruction that it believes it should generally be given in every case. PIK Crim. 4th 52.010 (2017 Supp.).

Collins claims the district court erred in two ways when it failed to provide the jury with the instruction in PIK Crim. 4th 52.010: (1) it failed to inform the jury that the crimes of methamphetamine possession and possession of drug paraphernalia had to be

9

committed intentionally or knowingly; (2) it failed to provide the jury with definitions of the terms "intentionally" or "knowingly." We are not persuaded by either argument.

Collins' first argument ignores the plain language of the two instructions given by the district court. In these instructions, the district court informed the jury about the proper mental states for both crimes. Our Supreme Court has held that the mental state for possession is embedded within the definition of the word "possession." *State v. Rizal*, 310 Kan. 199, 206-07, 445 P.3d 734 (2019). On both charges at issue, the district court clearly defined "possession" for the jury and the definition set forth the appropriate mental state: a person must have "knowledge of and the intent to . . . control" the item possessed. The possession of drug paraphernalia instruction set forth an additional mental state of "intent to use." These jury instructions are also consonant with the statutory definitions of the crimes. See K.S.A. 2017 Supp. 21-5706(a) (prohibiting possession of methamphetamine); K.S.A. 2017 Supp. 21-5709(b) (prohibiting possession of drug paraphernalia).

Our conclusion that the district court properly instructed the jury on the requisite mental states is also consistent with *Rizal*, 310 Kan. at 206-07. In that case, the Kansas Supreme Court considered K.S.A. 2011 Supp. 21-5705(a). This statute made it "unlawful for any person to distribute or possess with the intent to distribute" a controlled substance. Our Supreme Court held that this statute contained two mental states, "one on its face and the other imbedded in the definition of the word 'possession,' which applies to crimes involving controlled substances." 310 Kan. at 206.

First, the plain language of the statute required "possession to be committed 'with the intent to distribute' any controlled substance." 310 Kan. at 207. Second, possession is defined as "'having joint or exclusive control over an item with knowledge of and intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control.'" 310 Kan. at 207 (quoting K.S.A. 2011

10

Supp. 21-5701[q]). "Harmonizing these provisions," our Supreme Court concluded, "the crime of possession with intent to distribute a controlled substance requires proof that the defendant possessed—meaning knowingly exercised control—over any controlled substance with the intent to distribute it." 310 Kan. at 207.

Although *Rizal* is not a jury instruction case nor did it examine the crimes at issue here, its analysis is informative because the operative language in the relevant statutes is similar. *Rizal* teaches that the mental state for possession is embedded within the definition of the term, and that a statute requiring "intent" to do something sets forth a mental state on its face.

Applying *Rizal* to the jury instructions on appeal, the instruction for possession of drug paraphernalia required the jury to find that Collins "possessed a baggie with the intent to use it as drug paraphernalia to store, contain, conceal, inject, ingest, inhale or otherwise introduce into the human body methamphetamine." Similarly, the jury instruction for possession of methamphetamine required the jury to find that Collins "possessed methamphetamine." Both instructions included the definition of "possession." As a result, the jury instructions identified the culpable mental states needed to support Collins' convictions. See also *State v. Hanks*, No. 114,640, 2016 WL 4585620, at *4 (Kan. App. 2016) (unpublished opinion) (holding that jury instructions for possession of methamphetamine and possession of drug paraphernalia appropriately identified the culpable mental states).

Collins' second argument is that the district court should have defined the terms "intentionally" and "knowingly" for the jury consistent with the definitions in PIK Crim. 4th 52.010 (Culpable Mental State) and K.S.A. 2017 Supp. 21-5202(h)-(i). He acknowledges that on numerous occasions our court has rejected this argument, but he argues these cases were wrongly decided.

11

Our court has held on numerous occasions that a district court has no duty to define the terms "intentionally" or "knowingly" when those terms appear in jury instructions. See, e.g., *State v. Bacon*, No. 114,951, 2017 WL 2403355, at *9-10 (Kan. App. 2017) (unpublished opinion); *State v. Garrett*, No. 114,191, 2017 WL 2304450, at *3-4 (Kan. App. 2017) (unpublished opinion); *Hanks*, 2016 WL 4585620. In *Hanks*, we explained:

> "The trial court should define words in an instruction only if the instructions as a whole would otherwise mislead the jury or cause it to speculate. *State v. Armstrong*, 299 Kan. 405, 440, 324 P.3d 1052 (2014). The trial court is not required to define for the jury widely used words or those readily comprehensible by individuals of common intelligence. 299 Kan. at 440; *State v. Roberts-Reid*, 238 Kan. 788, 789, 714 P.2d 971 (1986). The test to determine if the trial court is required to define a legal term in the jury instructions rests on whether the common lay definition of the term differs from the legal definition of the term. *State v. Patton*, 33 Kan. App. 2d 391, 397, 102 P.3d 1195 (2004), *rev. denied* 279 Kan. 1009 (2005)." *Hanks*, 2016 WL 4585620, at *3.

After setting forth the law, the Hanks court noted that the Legislature's definitions of the terms "knowingly" and "with intent" did not "differ from the dictionary definitions of those words or from how those words are used by nonlawyers in their everyday conversations." 2016 WL 4585620, at *3-4. As a result, the court concluded, the district court was not required to define the terms. See also, *State v. Wol*, No. 115,633, 2017 WL 3000839, at *4 (Kan. App. 2017) (unpublished opinion) (stating that a court's failure to define the words "intent" and "knowingly" in jury instructions did not render the instructions erroneous "because jurors are supposed to be capable of deciphering the meaning of many difficult terms without their definitions").

Collins urges our court to impose a duty upon district courts to instruct juries on the legal definitions of the terms "intentionally" and "knowingly." However, he provides no explanation as to why the definitions are legally required when the definitions of the

words are commonly understood by jurors. See *Bacon*, 2017 WL 2403355, at *11 (noting that appellant's argument failed to address "why the jury would not have understood the phrase 'with the intent to' given that the phrase means the same thing under both its legal definition and its layman's definition"). All things considered; the jury instructions given by the district court were legally appropriate. The court did not err by failing to define the terms "intentionally" and "knowingly."

## FAILURE TO INSTRUCT ON NONEXCLUSIVE POSSESSION

For Collins' third issue, he contends the district court erred by failing to instruct the jury on nonexclusive possession. As with the previous instructional issue, Collins did not request this instruction at trial, nor did he object to its omission. In the prior section, we have set forth our standard of review for jury instruction issues. See *McLinn*, 307 Kan. at 317. We will review this claim for clear error. K.S.A. 2017 Supp. 22-3414(3).

Kansas law provides: "When a defendant is in nonexclusive possession of the premises upon which drugs are found, it cannot be inferred that the defendant knowingly possessed the drugs unless there are other incriminating circumstances linking the defendant to the drugs." *State v. Marion*, 29 Kan. App. 2d 287, 290, 27 P.3d 924 (2001). Several factors relevant to nonexclusive possession are listed in PIK Crim. 4th 57.040 the instruction Collins asserts the district court should have provided. This instruction states:

> "[When a defendant is in nonexclusive possession of (the premises upon) (an automobile in) which a controlled substance is found, it cannot be inferred that the defendant knowingly possessed the controlled substance unless there are other circumstances linking the defendant to the controlled substance. You may consider all factors supported by the evidence in determining whether the defendant knowingly possessed the controlled substance, including the following:
> > "1. whether the defendant previously participated in the sale of a controlled substance;

13

"2. whether the defendant used controlled substances;

"3. whether the defendant was near the area where the controlled substance was found;

"4. whether the controlled substance was found in plain view;

"5. whether the defendant made any incriminating statements;

"6. whether the defendant's behavior was suspicious;

"7. whether the defendant's personal belongings were near the controlled substance.]"

See *Marion*, 29 Kan. App. 2d at 290.

The first issue is whether the facts, when viewed in the light most favorable to Collins, would support a nonexclusive possession instruction. The State argues this is an exclusive possession case because Deputy Boling saw Collins drop the baggie of methamphetamine into the tie-down port. Collins argues that the evidence was not so clear, and that the instruction would have assisted the jury in considering his defense that the methamphetamine belonged to Vandam.

We are not persuaded that a nonexclusive possession instruction was factually warranted in this case. Eyewitness testimony by Deputy Boling provided strong circumstantial evidence that the methamphetamine baggie found inside the tie-down port of Vandam's truck was dropped there contemporaneously with the deputy's observation of Collins' furtive hand gesture. In fact, there was no evidence that the baggie was ever in the passenger compartment of the truck, only that it was found in a secreted location inside the frame of the truck moments after Collins appeared to drop it there. Given these facts, there was no one, other than Collins, who exercised possession or control over the contraband.

Assuming there were sufficient facts when viewed in the light most favorable to Collins to support an instruction for nonexclusive possession, however, we find no clear

14

error in the district court failing to give the instruction. Because Collins did not request the instruction at trial, he must show the district court's failure to give the instruction was clear error. But Collins cannot satisfy his burden of demonstrating that the jury would have reached a different verdict if the nonexclusive possession instruction had been given.

Many of the factors listed in the nonexclusive possession instruction would have weighed against Collins, had it been provided to the jury. As just noted, Collins appeared to drop something into the tie-down port. Collins stood near the area where the baggie was later found and seemed reluctant to leave. When Deputy Boling began to arrest Collins, he yelled to Vandam, "They found a baggie," even though the deputy had not announced to anyone that he found the methamphetamine. Lastly, both officers thought Collins tried to blow the baggie off the ledge inside the port.

Given these facts, we are not firmly convinced that the jury would have reached a different verdict if the nonexclusive possession instruction had been provided to the jury. K.S.A. 2017 Supp. 22-3414(3) On the contrary, had the instruction been given, it is highly likely that the jury would have arrived at the same verdict. Collins has not shown clear error.

CUMULATIVE TRIAL ERRORS

Collins also argues that cumulative errors denied him a fair trial.

Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they

15

arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. *State v. Hirsh*, 310 Kan. 321, 345-46, 446 P.3d 472 (2019).

A single trial error may not support reversal under the cumulative error doctrine. *State v. Ballou*, 310 Kan. 591, 617, 448 P.3d 479 (2019). Because we have found no trial errors in this case, the cumulative trial error doctrine does not apply.

## WHETHER THE COURT'S CRIMINAL HISTORY FINDINGS VIOLATED THE KANSAS CONSTITUTION

Collins' final argument is that the Kansas Constitution guarantees the accused a right to a jury trial to prove the existence of prior convictions. Collins argues that the district court violated his constitutional right to a fair trial when it sentenced him based on a criminal history score that was not proven to the jury. He asks this court to remand the case for resentencing based on an I criminal history score, or for a jury trial on the existence of his prior convictions.

Collins did not raise this argument in the district court. As we noted earlier regarding the search and seizure question, constitutional grounds for reversal asserted for the first time on appeal are not properly before an appellate court for review. *Daniel*, 307 Kan. at 430. More generally, apart from constitutional issues, litigants are not permitted to assert a new legal theory for the first time on appeal. Collins claims two exceptions to the general rule: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; and (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. See *Johnson*, 309 Kan. at 995.

Regarding the first exception, Collins asserts this issue presents a purely legal challenge that "has nothing to do with the particular facts of this case." Second, he

contends that "review of this issue would ensure compliance with Section 5 of the Kansas Constitution Bill of Rights."

We apply the general rule of preservation and decline to review this constitutional claim. See *Daniel*, 307 Kan. at 430. Regarding the first exception claimed by Collins, we note that in the event we agreed with his constitutional contention, our holding would not be finally determinative of the case because it would require a remand for a jury to be empaneled to consider Collin's criminal history and, based on the jury's findings, resentencing by the district court.

Regarding the second exception, we do not find it necessary to consider this claim to serve the ends of justice or prevent a denial of fundamental rights because the Kansas Supreme Court and our court have considered and denied similar claims relating to the 5th Amendment to the Kansas Constitution in other criminal cases. See *Levell v. Simpson*, 142 Kan. 892, 893-94, 52 P.2d 372 (1935); *State v. Albano*, 58 Kan. App. 2d 117, 133-34, 464 P.3d 332 (2020); *State v. Smith*, No. 121,267, 2020 WL 3022874 (Kan. App. 2020) (unpublished opinion); *State v. Valentine*, No. 119,164, 2019 WL 2306626, at *6 (Kan. App. 2019) (unpublished opinion).

Finally,

> "[t]he decision to review an unpreserved claim under an exception is a prudential one. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017); *State v. Frye*, 294 Kan. 364, 369, 277 P.3d 1091 (2012). Even if an exception would support a decision to review a new claim, we have no obligation to do so. *Parry*, 305 Kan. at 1192." *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020).

All things considered; we decline to review this constitutional claim for the first time on appeal.

17

Affirmed.

***

ATCHESON, J. concurring:  I concur in the outcome here affirming Defendant Joel Dean Collins' multiple convictions in a jury trial and the resulting sentences the Shawnee County District Court later imposed. But I add two observations questioning (again) the procedural bar to our considering the merits of his motion to suppress evidence and pointing out what appears to be a flaw in the jury instruction on possession of illegal drugs.

First, we are obligated to follow the Kansas Supreme Court's construction of the contemporaneous objection rule codified in K.S.A. 60-404 to preclude appellate review of the district court's denial of Collins' motion to suppress. I have previously outlined why that approach ill serves the interests of basic fairness in criminal cases and promotes no sound countervailing policy objectives. *State v. White*, No. 109,953, 2014 WL 5312873, at *8-15 (Kan. App. 2014) (unpublished opinion) (Atcheson, J., concurring). I do not repeat the discussion here, but I remain of that view. I offer no opinion on the merits of Collins' motion to suppress and suggest only that we ought to be permitted to reach the merits.

Second, the district court's instruction on the elements of possession of methamphetamine insufficiently apprised the jurors of a defendant's requisite mental state to convict. But the defect cannot be considered clear error on the facts, so I am comfortable affirming Collins' conviction. There are really two aspects of criminal possession that require knowledge on the part of the defendant. In the phrasing of the jury instruction, the defendant must know he or she possesses "an item"—here, that would be the plastic bag containing white powder—without necessarily knowing the item to be illegal drugs or similar contraband. Second, however, the defendant must also know the item he or she possesses to be contraband, i.e., an illegal substance. That aspect of

18

possession has been lost in both the jury instruction the district court used and PIK Crim. 4th 57.040, from which the instruction was crafted.[*]

[*]The district court's instruction stated:

"Instruction Number 9. The defendant is charged with unlawfully possessing methamphetamine. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. The defendant possessed methamphetamine.

"2. This act occurred on or about the 21st day of April, 2018, in Shawnee County, Kansas.

"Possession means having joint or exclusive control over an item with knowledge of and the intent to have such control or knowingly keeping some item in a place where the person has some measure of access and right of control."

In those respects, the instruction matched PIK Crim. 4th 57.040.

The first aspect of possession goes to this sort of defense: "I didn't even know that bag of white powder was in my gym bag; somebody must have slipped it in there when I wasn't looking." That's a defense. And the instruction addresses it by requiring the jurors to find the defendant had knowledge of and some degree of control over "an item." But there is a second defense: "Sure, I had the bag of white power; a trainer at the gym gave it to me that morning and told me it was a natural workout booster; I didn't even have a chance to look closely at it before I was arrested." That, too, is a defense. It is a mistake of fact that would require jurors to bring back a not guilty verdict if they believed it might be true, thereby fostering a reasonable doubt about the defendant's *unlawful* possession of the contraband. See *State v. Rizal*, 310 Kan. 199, 207-09, 445 P.3d 734 (2019).

The jury instruction fails to capture the mistake-of-fact defense at all. The instruction tells jurors to convict so long as they are convinced beyond a reasonable doubt the defendant knew he or she possessed "an item" that turned out to be methamphetamine

19

or some other contraband. They do not have to find that the defendant actually knew "the item" to be contraband and, therefore, ought to convict based on the instruction even if they had reason to believe the defendant did not know. *State v. Becker*, 290 Kan. 842, 856, 235 P.3d 424 (2010) ("Appellate courts presume that a jury follow[s] the jury instructions."). In that respect, the jury instruction was incorrect or at least seriously incomplete in outlining the legal principles necessary for a conviction of possessing methamphetamine or another illegal drug.

Given the trial evidence, however, the error could not have contributed to the guilty verdict against Collins on the possession of methamphetamine charge. Collins did not specifically present a mistake-of-fact defense. And his behavior, as described during the trial, was consistent with his knowledge the plastic bag contained methamphetamine or some other illegal substance. I am not firmly convinced the jury would have reached a different verdict had the instruction properly addressed both aspects of possession. So I join in affirming the conviction and sentence.